# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 8, 2010

No. 08-41037

Charles R. Fulbruge III
Clerk

CORLINE ALLEN, Individually and on behalf of all others similarly situated; ALL PLAINTIFFS; LORENZO AGUIRRE; THEOTIS ANDERSON; GERARDO AVALOS; ET AL,

                                           Plaintiffs-Appellants

v.

MCWANE INC.

                                           Defendant-Appellee

Appeal from the United States District Court
for the Eastern District of Texas

Before JONES, Chief Judge, GARZA and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

This collective action under the Fair Labor Standards Act ("FLSA"), on behalf of hourly employees of McWane, Inc. ("McWane"), sought payment for pre- and post-shift time spent donning and doffing protective gear. The district court granted summary judgment on the basis that at each plant there existed a custom or practice of not compensating pre- or post- shift time spent putting on and taking off protective gear. We AFFIRM.

No. 08-41037

## I.  FACTUAL AND PROCEDURAL BACKGROUND

McWane operates plants that manufacture cast iron pipe and fittings.  The hourly employees at McWane's plants wear protective gear while at work, including hard hats, steel-toed boots, safety glasses, and ear plugs.  This appeal involves hourly workers at ten McWane plants that operate under collective bargaining agreements ("CBAs").  Different CBAs govern each of the plants, and workers are employed subject to the terms of their respective CBA.  Three of the plants operate under CBAs that expressly exclude compensation for pre- and post-shift donning and doffing of protective gear; the other seven CBAs do not address pre- and post-shift time spent putting on and taking off protective gear.[1]

The workers at the plants are paid by the hour, based on shift or line time.  Line time  refers to the practice of measuring the shift as starting when the first item hits the processing line and ending as the last item leaves the processing line.    None  of  McWane's  employees  at  these  plants  have  ever  received compensation for pre- and post-shift changing time.  Union representatives and the employees attest that they were not aware that the pre- and post-shift changing time was potentially compensable under the FLSA.  Compensation for such time was never discussed in union meetings or in meetings between union

---

[1] Those seven plants whose CBAs do not address compensation for pre- and post-shift donning and doffing are:

| (1) | Tyler Pipe-Texas (Tyler, TX) |
| (2) | Union Foundry Company (Anniston, AL) |
| (3) | M & H Valve Company (Anniston, AL) |
| (4) | Kennedy Valve Company (Elmira, NY) |
| (5) | McWane Cast Iron Pipe Company (Birmingham, AL) |
| (6) | Clow Valve Company (Oskaloosa, IA) |
| (7) | Clow Water Systems Company (Coshocton, OH) |

No. 08-41037

representatives and McWane, including the meetings where the CBAs were negotiated.

Plaintiffs-appellants (collectively, "Allen") filed their collective claim against McWane, on behalf of over 2,100 McWane employees, under 29 U.S.C. §§ 207 and 216(b) of the FLSA. They sought compensation for time spent putting on and taking off gear before and after their scheduled shifts. The district court conditionally certified the case as a collective action. McWane moved for summary judgment, and the motion was referred to the magistrate judge. Relying on *Anderson v. Cagle's, Inc.*, 488 F.3d 945 (11th Cir. 2007), the magistrate judge recommended that summary judgment should be granted because § 203(o) of the FLSA was applicable. Allen filed objections to the magistrate's recommendations. The district court considered and overruled Allen's objections, adopted the magistrate judge's recommendations, and granted summary judgment in favor of McWane. Allen timely appealed.

## II. DISCUSSION

This court reviews a district court's grant of summary judgment *de novo*, applying the same standards as the district court. *McGavock v. City of Water Valley, Miss.*, 452 F.3d 423, 424 (5th Cir. 2006). Summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the burden of demonstrating that there are no genuine issues of material fact in dispute. *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 433 (5th Cir. 2005). "This Court resolves any doubts and draws all reasonable inferences in favor of the nonmoving party." *United States*

No. 08-41037

*ex rel. Longhi v. United States*, 575 F.3d 458, 465 (5th Cir. 2009). "Additionally, we construe the FLSA liberally in favor of employees . . . ." *McGavock*, 452 F.3d at 424.

This appeal requires construction of § 203(o) of the FLSA, which allows for the exclusion from the computation of hours worked, under certain circumstances, of time spent changing clothes at the beginning or end of each workday. The controlling issue is whether a § 203(o) "custom or practice" of non-compensation for such time existed. In addition, the parties dispute who has the burden of proof under § 203(o) and whether material issues of fact exist.

## A.  Custom or Practice of Non-Compensation under § 203(o)

"The Fair Labor Standards Act of [1938] establishes the general rule that employees must receive overtime compensation at one and one-half times the regular rate for hours worked in excess of 40 hours during a seven-day workweek." *McGavock*, 452 F.3d at 423-24; 29 U.S.C. § 207(a). Section 207(a) states:

> Employees engaged in interstate commerce; additional applicability to employees pursuant to subsequent amendatory provisions
>> (1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

"Under 29 U.S.C. § 203(o), the time spent changing clothes is to be excluded from the measured working time [for purposes of § 207] if it has been excluded by

No. 08-41037

custom or practice under a bona fide collective-bargaining agreement." *Bejil v. Ethicon, Inc.*, 269 F.3d 477, 479 (5th Cir. 2001); § 203(o).  Section 203(o) states:

> Hours Worked.--In determining for the purposes of sections 206 and 207 of this title the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee.[2]

---

[2] The legislative history of § 203(o) is particularly helpful here, as noted by the Eleventh Circuit in *Anderson v. Cagle's*:

In 1947, approximately nine years after the FLSA was enacted to eliminate "conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers," 29 U.S.C. § 202 (2000), Congress passed the Portal-to-Portal Act, 29 U.S.C. §§ 251-262 (2000). The Portal-to-Portal Act aimed to countermand judicial interpretations of the FLSA that Congress found to evidence a

disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers with the results that, if said Act as so interpreted or claims arising under such interpretations were permitted to stand, (1) the payment of such liabilities would bring about financial ruin of many employers and seriously impair the capital resources of many others ...; (2) the credit of many employers would be seriously impaired; (3) there would be created both an extended and continuous uncertainty on the part of industry, both employer and employee, as to the financial condition of productive establishments and a gross inequality of competitive conditions between employers and between industries; (4) employees would receive windfall payments, including liquidated damages, of sums for activities performed by them without any expectation of reward beyond that included in their agreed rates of pay; (5) there would occur the promotion of increasing demands for payment to employees for engaging in activities no compensation for which had been contemplated by either the employer or employee at the time they were engaged in; [and] (6) voluntary collective bargaining would be interfered with and industrial disputes between employees and employers and between employees and employees would be created.

5

No. 08-41037

Allen argues that here the facts do not establish a "custom or practice under a bona fide collective-bargaining agreement" that would make changing time non-compensable.[3] Allen claims that compensation for the pre- and post-shift changing time is a pre-existing right under the FLSA, subject to exclusion only if it has been affirmatively bargained away in CBA negotiations; *i.e.*, negotiation of whether to pay for pre- and post-shift changing time must be shown before the court may conclude that there was a custom or practice as provided in § 203(o). According to Allen, there has been no acquiescence or waiver here because the union representatives did not have knowledge of the right to compensation for this pre- and post-shift changing time, nor any knowledge of or acquiescence to a policy of nonpayment for that time.

This court addressed a related issue in *Bejil*: whether employees had a right to compensation for changing time where the union and the employer had

---

29 U.S.C. § 251 (2000).

Congress's efforts to curtail employee-protective interpretations of the FLSA continued when the FLSA was amended two years later to add, among other things, what would become § 203(o). As the sponsor of the relevant amendment explained to fellow representatives, the purpose of the amendment was to "avoid [ ] another series of incidents which led to the portal-to-portal legislation." 95 Cong. Rec. 11,433 (daily ed. Aug. 10, 1949) (comments of Rep. Herter). Essentially, he explained, the amendment would strengthen the employer-protective Portal-to-Portal Act by closing a "loophole" therein. *Id*.
488 F.3d 945, 957-58 (11th Cir. 2007).

[3] In *Bejil v. Ethicon, Inc.*, this Court determined that protective gear constitutes "clothes" under § 203(o). 269 F.3d at 480 n. 3. The parties here do not dispute that the term "changing clothes" in § 203(o) includes the putting on and taking off of protective gear. *See also* Dep't of Labor, Wage & Hour Opinion Letter, FLSA2007-10 (May 14, 2007) (stating that "'changing clothes' referred to in section 3(o) applies to putting on and taking off the protective safety equipment typically worn by employees in the meat packing industry."); Dep't of Labor, Wage & Hour Opinion Letter, FLSA2002-2 (June 6, 2002) ("we interpret 'clothes' under section 3(o) to include items worn on the body for covering, protection, or sanitation . . .").

discussed that very question during CBA negotiations, but the CBA ultimately remained silent on the matter. 269 F.3d at 480. We concluded that such silence in the CBA, after the parties negotiated over the matter, resulted in a "custom or practice" of not compensating the employees for the changing time, and therefore § 203(o) barred claims for back wages for such time. *Id.* Here, unlike in *Bejil*, there was no discussion of whether McWane should compensate the Allen plaintiffs for such clothes changing time.

The Third and Eleventh Circuits have considered the specific question of whether § 203(o) requires the employees and employer to have discussed the issue of compensation for pre- and post-shift changing time, where the CBA is silent on the issue, in order to find that a custom or practice of nonpayment existed pursuant to a CBA. The Third and Eleventh Circuits concluded that it was not necessary for the issue to have been raised in negotiations. *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 958-59 (11th Cir. 2007); *Turner v. City of Philadelphia*, 262 F.3d 222, 226 (3d Cir. 2001).

*Turner* presented the following uncontested facts: (1) Philadelphia had not compensated corrections officers for uniform change time for over 30 years; (2) every CBA between Philadelphia and the officers had been silent as to compensation for change time; (3) the union president proposed at labor management meetings with Philadelphia's Labor Relations Administrator that change time be made compensable, but the union did not make this request in formal CBA negotiations; (4) the union did, however, ask for and receive a uniform maintenance allowance; and (5) the union never filed a grievance or demanded arbitration based on the non-compensability of change time. *Turner*, 262 F.3d at 225.

No. 08-41037

The *Turner* plaintiffs made an argument similar to the one articulated by Allen, that "a 'custom or practice' of non-compensability cannot come into being unless (1) the issue of compensability is specifically raised in formal collective bargaining negotiations, and then (2) dropped by the negotiators." *Id.* at 226. Rejecting this approach, the Third Circuit held that the plaintiffs and their union had acquiesced to the municipal government's thirty-year policy of not compensating for changing time. *Id.* at 227. The court explained:

> We think that plaintiffs interpret the phrase "custom or practice under a bona fide collective-bargaining agreement" too narrowly, placing undue emphasis on the clause "under a bona fide collective-bargaining agreement" while virtually reading the clause "custom or practice" out of § 203(o). In essence, plaintiffs construe "custom or practice under a bona fide collective-bargaining agreement" as "custom or practice established through formal collective bargaining negotiations." To the contrary, we view the phrase as simply restating the well-established principle of labor law that a particular custom or practice can become an implied term of a labor agreement through a prolonged period of acquiescence.

*Id.* at 226. The *Turner* court also rejected the argument that the plaintiffs had an antecedent right to payment under the FLSA such that they could not acquiesce to non-compensation without the issue being negotiated, noting that § 203(o) itself defines what work time is encompassed by that right to payment. *Id.* at 226-27.

In *Anderson*, the employer had not compensated the employees for time spent donning and doffing protective gear for approximately ten years. 488 F.3d at 958. Additionally, the court assumed for purposes of its decision that every CBA during the relevant time period had been silent as to compensation for changing time, and assumed that the parties had never discussed the policy. *Id.* at 958. The *Anderson* court followed *Turner*, also rejecting the argument that

8

No. 08-41037

a custom or practice under § 203(o) cannot exist unless the parties negotiated about the non-compensation policy. *Id*. at 958-59. "Relying again on a common sense understanding of the statute's language, we believe that a policy concerning compensation . . . for clothes changing, written or unwritten, in force or effect at the time a CBA was executed satisfies § 203(o)'s requirement of a 'custom or practice under a bona fide' CBA." *Id*. "Absence of negotiations cannot in this instance equate to ignorance of the policy.  Rather, it demonstrates acquiescence to it." *Id*. at 959.

The Eleventh Circuit noted that the issue in *Anderson* was not controlled by the Fifth Circuit's decision in *Hoover v. Wyandotte Chemicals Corporation*, 455 F.2d 387 (5th Cir. 1972).  In *Hoover*, another action to recover overtime pay under the FLSA, this court held that employees were not entitled to additional compensation for the extra eight to ten minutes of clothes changing time that they requested during collective bargaining negotiations, but which was not incorporated into the executed CBA. *Id*. at 388.  The custom and practice of the employer for approximately fifteen years had been to pay for fifteen minutes of changing time. During the most recent CBA negotiations, pay for 23-25 minutes of time had been requested but not adopted. *Hoover* held that the request did not change the custom or practice, which was to pay only for fifteen minutes of changing time. *Id*. at 389.  Although the employer had agreed to pay for changing time, where the employees raised the issue during CBA negotiations but there was no change in practice by the employer or change to the CBA on the issue, the relevant custom of non-payment for clothes changing time over fifteen minutes remained unaltered.

9

No. 08-41037

Allen both criticizes the reasoning of *Turner* and *Anderson* and tries to distinguish them. Allen observes that in *Anderson* the plaintiffs did not contend that they lacked notice of the relevant compensation policy, whereas here the employees and their union representatives were unaware of the potential for compensation under the FLSA. 488 F.3d at 959. However, neither *Turner* nor *Anderson* address the employees' awareness of the law, much less find it to be a controlling factor in their holding. *Anderson* merely observed that the plaintiffs were aware that the company had a policy of not paying for pre- and post-shift clothes changing time. *Id.* Similar facts were present in *Turner*. 262 F.3d at 225. Both courts concluded that silence by the employees and their union as to the non-compensability of this time when the CBAs were executed meant that a custom or practice of nonpayment was established pursuant to a CBA, and thus the time was not to be calculated as "hours worked" under § 203(o).

Allen relies heavily on the reasoning employed by *Kassa v. Kerry, Inc.*, 487 F. Supp. 2d 1063, 1071 (D. Minn. 2007). In *Kassa*, the defendant moved for summary judgment based on § 203(o). The court voiced its agreement with *Turner*, and determined that § 203(o) may apply even where non-payment for changing time was never raised in negotiations. The court then identified three elements as essential to determine the existence of a "custom or practice" under § 203(o): time, knowledge, and acquiescence. *Id.* at 1070-71 (relying on *Detroit & Toledo Shore Line R.R. Co. v. United Transp. Union*, 396 U.S. 142, 154 (1969)). *Kassa* assigned the burden to the defendant to show that "its policy of non-compensation for clothes-changing time lasted for a sufficiently long time, with sufficient knowledge and acquiescence by [the] employees, that the policy

became an implicit term—a 'custom or practice'—under the CBA." *Id.* at 1071. In *Kassa*, the record established that the non-payment by defendant had occurred for six years and the union had never complained about non-payment when executing the CBA. *Id.* The district court found this insufficient as a matter of law to establish a custom or practice, and denied summary judgment.

Allen also relies on the Supreme Court's statement in *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 740 (1981), that "FLSA rights cannot be abridged by contract or otherwise waived . . . ." *Barrentine* addressed whether employees at a union-organized plant operating under a CBA could sue their employer for violations of the minimum wage provisions of the FLSA. The CBA in *Barrentine* required the employees to submit the claim to a grievance committee; when they did so, the committee rejected their claims. The Court held that the right to sue for the violation of the FLSA could not be abridged or waived. *Id.* at 740. There is a significant distinction between the minimum wage provision at issue in *Barrentine* and the application of § 203(o) in the instant case: the FLSA rights at issue in *Barrentine* are independent of the collective bargaining process. *Id.* at 745. By contrast, under § 203(o) the right to be paid for pre- or post-shift changing time may be abridged by contract—a bona fide CBA. *See also Livadas v. Bradshaw*, 512 U.S. 107, 131-32 (1994) (addressing question of meaningful bargaining under the National Labor Relations Act, referring to § 203(o) of the FLSA as an example of a "narrowly drawn opt-out provision," and noting employees have full protection of the minium standard "absent any agreement for something different").

We are persuaded by the reasoning of the Third and Eleventh Circuits, and join them in holding that even when negotiations never included the issue

of non-compensation for changing time, a policy of non-compensation for changing time that has been in effect for a prolonged period of time, and that was in effect at the time a CBA was executed, satisfies § 203(o) 's requirement of "a custom or practice under a bona fide" CBA. *See Anderson*, 488 F.3d at 958-59 (policy of non-compensation had been in place for at least ten years); *Turner*, 262 F.3d at 226 (policy of non-compensation had been in place for thirty years). In such instances, regardless of whether the parties negotiated regarding compensation for changing time, acquiescence of the employees may be inferred. By contrast, where there have been no relevant negotiations and the facts do not demonstrate that a policy of non-compensation for changing time has been in effect for a prolonged period of time, other evidence of knowledge and acquiescence by the employees will be required. *See Gatewood v. Koch Foods of Miss.*, 569 F. Supp. 2d 687, 698-700 (S.D. Miss. 2008) (holding that even in the absence of a long-standing tradition of non-compensation or negotiations for compensation of time spent changing clothes, "when employees and union representatives are conclusively aware of the facts surrounding compensation policies for changing clothes at the beginning and end of each workday, and reach an agreement under a CBA that does not compensate employees for the time, a 'practice' exists under the CBA sufficient to invoke the § 203(o) defense").[4]

---

[4] *Arcadi v. Nestle Food Corp.*, 38 F.3d 672 (2d Cir. 1994) first drew the distinction between those situations requiring evidence of acquiescence—such as through negotiations, for example—and those that do not. In *Arcadi*, the Second Circuit distinguished between "custom" and "practice" under § 203(o). *Id.* at 675. "Custom" relates to the past; as in *Turner* and *Anderson*, a court looks for "an ongoing understanding with some continuity." 38 F.3d at 672. Thus, a "custom," in and of itself, demonstrates acquiescence. Regardless of past policies, however, a "practice" can exist if the parties "negotiate over an issue and have an understanding that resolves it" or if there is evidence of an unwritten agreement, even if the

No. 08-41037

Thus, as long as there was a company policy of non-compensation for time spent changing for a prolonged period of time—allowing the court to infer that the union had knowledge of and acquiesced to the employer's policy—and a CBA existed, the parties need not have explicitly discussed such compensation when negotiating the CBA. McWane "only need prove that the parties had a 'custom or practice' of non-compensation under the agreement." *Bejil*, 269 F.3d at 479. It is undisputed that McWane has never compensated its employees for changing time, going as far back as 1965. After more than forty years of non-compensation, we may safely infer that McWane's employees had knowledge of and acquiesced to the policy of non-compensation. Therefore, we conclude that McWane has demonstrated a "custom" of non-compensation for changing time.

## B. Burden of Proof on the Applicability of § 203(o)

Allen urges the court to characterize § 203(o) as an exemption, and argues that the application of an exemption under the FLSA is an affirmative defense for which the defendant has the burden of proof. Allen relies on *Kassa*'s holding that it is the defendant's burden, and on Supreme Court precedent indicating that exemptions are to be narrowly construed against the employer. *See Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960); *Kassa*, 487 F. Supp. 2d at 1071.

The statute, however, demonstrates that § 203 is a list of definitions and subsection (o) addresses how to define and calculate "hours worked," in contrast to § 213, which is titled "Exemptions." 29 U.S.C. § 203(o); *see also Anderson*, 488 F.3d at 957 (noting that § 203 provides a list of definitions, but § 213 is titled "Exemptions," and concluding that § 203(o) is not an affirmative defense);

issue is not expressly addressed in the CBA. *Id.*

*Turner*, 262 F.3d at 225-26 (plaintiffs had burden of persuasion as to whether or not a custom or practice under § 203(o) existed).  In addition, the "exemptions" the Supreme Court refers to as affirmative defenses to the FLSA all "relate[ ] to the total exclusion of a particular worker or workers from certain FLSA protections[,]" not "to the exclusion of only some *activities* from FLSA." *Adams v. United States*, 471 F.3d 1321, 1325-26 (Fed. Cir. 2006).

The only circuit court holding § 203(o) to be an exemption is the Ninth Circuit.  *Alvarez v. IBP, Inc.*, 339 F.3d 894, 905 (9th Cir. 2003), *aff'd on other grounds*, *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005) (concluding that § 203(o) constitutes an "exemption" from FLSA requirements and is an affirmative defense on which the defendant bears the burden).  However, in *Anderson* the Eleventh Circuit persuasively critiqued the Ninth Circuit's characterization of § 203(o) as an exemption. *Anderson*, 488 F. 3d at 957.  The *Anderson* court noted that all the cases on which the Ninth Circuit relied concerned § 213 of the FLSA, which is titled "Exemptions."  *Id*.  The court further observed that "[h]ad Congress sought to bestow upon § 203(o) the same status as the exemptions set forth in § 213, it easily could have amended § 213 instead of § 203, which is titled, not coincidentally, 'Definitions.'"  *Id*.  Beyond repeating criticism of the reasoning in *Anderson,* Allen does not offer further argument as to why § 203(o) is an affirmative defense allocating the burden of proof to McWane.

Thus, here Allen had the burden of proof as to whether or not a custom or practice under § 203(o) existed.  *See Adams*, 471 F.3d at 1326 ("An employee who brings suit . . . for unpaid minimum wages or unpaid overtime compensation . . . has the burden of proving that he performed work for which he was not properly compensated.") (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S.

680, 686-87 (1946)).  Once McWane satisfied its summary judgment obligation of showing that Allen had failed to support some essential element of its case, Allen then had the burden of showing that the clothes-changing "does not fall into the set of activities excluded from the definition of" hours worked by section 203(o).  *Id*.  Although Allen argues that McWane cannot prevail by merely submitting evidence of the number of years that its policy of non-payment has been in effect, "[s]ince the burden of proof is on [Allen], we reject [the] argument that summary judgment to [McWane] was improper because [McWane] presented minimal evidence." *Id*.

Allen also claims that the declarations presented from employees establish that they did not knowingly acquiesce to a practice of non-payment for changing time, and that those declarations require reversal of summary judgment.  The declarations, however, demonstrate only that the employees and their union representatives were unaware of their legal rights under the FLSA—not that they were unaware that they were not being compensated for the time. *See, e.g.*, *Gatewood*, 569 F. Supp. 2d at 701 (when employees and union representatives are "aware of *the facts* surrounding compensation policies for changing clothes . . . a 'practice' exists under the CBA sufficient to invoke the § 203(o) defense.") (emphasis added).  While evidence of the employees and their union representatives' ignorance of the fact of non-compensation could create a genuine issue of material fact, no such evidence has been proffered by Allen.  The declarations are irrelevant because they do not change the facts established by McWane that (a) McWane did not pay for such time over a prolonged period, allowing an inference of knowledge and acquiescence, and (b) bona fide CBAs existed.

15

No. 08-41037

## III.  CONCLUSION

We adopt the reasoning of the Third and Eleventh Circuits and hold that negotiation is not necessary in order to find that a "custom or practice" exists under § 203(o).  We further hold that § 203(o) is not an affirmative defense. Therefore, the judgment of the district court is AFFIRMED.