RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0275p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

ALICE FRANKLIN,

       *Petitioner-Appellant,*

    *v.*

KELLOGG COMPANY,

       *Respondent-Appellee.*

No. 09-5880

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 08-02268—Jon Phipps McCalla, Chief District Judge.

Argued: June 18, 2010

Decided and Filed: August 31, 2010

Before: SILER and CLAY, Circuit Judges; GRAHAM, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Rachhana T. Srey, NICHOLS KASTER, PLLP, Minneapolis, Minnesota, for Appellant. Maurice Wexler, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC, Memphis, Tennessee, for Appellee. **ON BRIEF:** Rachhana T. Srey, Paul J. Lukas, NICHOLS KASTER, PLLP, Minneapolis, Minnesota, William B. Ryan, DONATI LAW FIRM, LLP, Memphis, Tennessee, for Appellant. Maurice Wexler, Angie C. Davis, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC, Memphis, Tennessee, James N. Boudreau, GREENBERG TRAURIG, LLP, Philadelphia, Pennsylvania, for Appellee.

    SILER, J., delivered the opinion of the court, in which GRAHAM, D. J., joined. CLAY, J. (pp. 22-26), delivered a separate dissenting opinion.

_____

[*]The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

---

**OPINION**

---

SILER, Circuit Judge.   Alice Franklin, an employee at Kellogg Company's ("Kellogg") Rossville, Tennessee Plant ("Plant" or "Rossville Plant"), filed suit on behalf of herself and all similarly situated employees to recover wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, for time spent donning and doffing Kellogg's mandatory food safety uniforms and protective equipment, and for time spent walking to and from the changing area and the time clock.   The district court granted summary judgment in favor of Kellogg, concluding that donning and doffing the equipment at issue here is excluded from hours worked under 29 U.S.C. § 203(o) and that, in the alternative, Kellogg established good faith reliance on a Department of Labor ("DOL") opinion letter under § 259(a).   Franklin appeals.   For the following reasons, we **AFFIRM IN PART**, **REVERSE IN PART**, and **REMAND** for further consideration.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Kellogg owns and operates the Rossville Plant, which produces frozen breakfast foods.   Franklin is an hourly production employee at the Plant.   She is joined in this action by approximately 243 current and former Kellogg employees who work or have worked in the Rossville Plant and other Kellogg plants across the country.   The Local 400-G American Federation of Grain Millers International AFL-CIO (the "Union") represents the hourly production and maintenance workers at the Plant.[1]   The Union is the sole and exclusive bargaining agent for all hourly production workers at the Plant. Since 1989, the Plant and its employees have operated under the terms of the Collective Bargaining Agreements ("CBAs"), which have been updated approximately every three years.

---

[1]A union has represented the hourly production and maintenance employees since the Plant opened in 1989.

Since the Plant opened, Kellogg has required all hourly employees to wear company-provided uniforms, which consist of pants, snap-front shirts bearing the Kellogg logo and employee's name, and slip-resistant shoes (collectively referred to as the "uniform"). In addition, hourly production and maintenance employees must wear hair nets and, where necessary, beard nets, safety glasses, ear plugs, and bump caps (collectively referred to as the "standard equipment"). Kellogg requires the employees to change into their uniform and standard equipment upon arriving at the Plant, and to change back into their regular clothes before leaving the Plant, so that the uniform and equipment can be washed at the Plant. Kellogg has never paid its hourly employees for the time spent donning and doffing the uniform and equipment or the time spent walking to and from the locker room and the time clock. This nonpayment policy was in effect at the Rossville facility before it was owned by Kellogg, before it was organized by the Union, and at the time of the negotiations of each CBA.

Despite Kellogg's established history of nonpayment for the time spent donning and doffing the uniform, there is no written agreement or provision in the governing CBA addressing that policy. Additionally, all of the CBAs between the Union and Kellogg have explicitly contained the following "Local Working Conditions" provision:

> The term "local working conditions" as used herein means specific practices or customs which reflect detailed application of the subject matter within the scope of wages, hours of work or other conditions of employment which the Parties reduced to writing by mutual agreement. No local working condition shall be established except as it is expressed in writing in an agreement approved by the Plant Manager and the local Union President. Only those officials shall be empowered to change, modify or eliminate local working conditions.

Despite the Union's knowledge of the nonpayment policy, there is some evidence that it was unaware that its members may have been entitled to payment for that time. For instance, Ocie Johnson, a Union official involved in negotiations for three of the CBAs, declared that "[a]t no time during any of the negotiations for these various [CBAs] was the subject of payment for putting on and taking off mandatory food safety uniforms and protective equipment discussed or mentioned by the [U]nion or Kellogg."

He further stated that the reason the issue was not mentioned was "because the [U]nion was unaware that [its] members may have been entitled to receive compensation for this time." Four other Union officials submitted similar declarations.

On the other hand, there is also evidence that the Union was aware of its members' right to payment for that time. For example, Teresa West, a Union executive board member between 1998 and 2000 and a local Union financial secretary between 2000 and 2003, submitted a declaration that "on at least one occasion" while she was an officer, "the Union considered including in its preliminary list of contract proposals, payment for the time bargaining unit employees spent putting on and taking off their company-furnished uniforms at the beginning and end of each shift." However, she also stated that because she "was not an official member of the Union bargaining team, [she was] not sure the extent to which the proposal made it to the bargaining table." In addition, in 2008, Franklin spoke with her Union steward Alicia Williams about compensation for this time. Williams told her that employees have been uncompensated for those activities "for a long time." Franklin also stated that she talked to Union stewards about filing a grievance regarding payment for donning and doffing the uniform, but they convinced her it would be a "lost cause."

In 2004, employees at Kellogg's Lancaster, Pennsylvania plant sued Kellogg to recover time spending donning and doffing company-issued uniforms and equipment. *See Albright v. Kellogg Co.*, No. 04-cv-632 (E.D. Pa.). Around the time of the initiation of the *Albright* action, William Muth, Jr., then in-house labor counsel for Kellogg, began researching Kellogg's noncompensation policy. He analyzed the compensation policies for time spent donning and doffing at the Omaha and Lancaster plants. Based on case law and an Opinion Letter issued by the DOL in 2002 ("2002 Opinion Letter"), Muth concluded that the company's policies were consistent with § 203(o) of the FLSA. Although Muth did not research the practices at the other plants, he assumed that, like the Omaha and Lancaster plants, they had historically not paid for time spent donning and doffing.

After the *Albright* action was dismissed, Kellogg held a meeting to discuss whether it should change its compensation practices related to time spent donning and doffing. During that meeting, Muth reviewed Kellogg's policies and again advised the company that its procedures conformed with the 2002 Opinion Letter. Muth, along with other Kellogg officials at the meeting, concluded that the company-provided uniform and standard equipment were "clothes" under § 203(o). They further concluded that putting on and taking off the uniform and equipment constituted "changing clothes" pursuant to the definition provided by the 2002 Opinion Letter. They also concluded that none of Kellogg's unionized plants had ever compensated employees for this time. Thus, they believed the policy constituted a custom or practice and chose not to alter it.

After Franklin filed this suit in 2008, Kellogg moved for summary judgment arguing that the time spent donning and doffing the company-provided uniform and equipment was excluded under § 203(o) and, alternatively, that it was entitled to the affirmative defense in §259(a) for its good faith reliance on the DOL letters. The district court agreed and granted summary judgment in favor of Kellogg.

## II.  STANDARD OF REVIEW

We review de novo the district court's grant of summary judgment. *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393 (6th Cir. 2008). Summary judgment is proper "if the pleadings, the discovery and disclosures materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

## III.  DISCUSSION

### A.  Exclusion of Time Under §203(o)

Under the FLSA, employers must pay their employees an overtime wage at "a rate not less than one and one-half times the regular rate at which [they are] employed" for hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1); *see also Allen v. McWane, Inc.*, 593 F.3d 449, 453 (5th Cir. 2010); *Turner v. City of Philadelphia*, 262 F.3d 222, 224 (3d Cir. 2001). However, § 203(o) excludes changing

clothes from the measured working time under § 207 if it has been excluded by custom or practice under a bona fide CBA:

> Hours Worked.—In determining for the purposes of sections 206 and 207 of this title the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee.[2]

---

[2]As explained in *Anderson v. Cagle's, Inc.*, 488 F.3d 945 (11th Cir. 2007), the legislative history of § 203 is relevant to our analysis:

> In 1947, approximately nine years after the FLSA was enacted to eliminate "conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers," 29 U.S.C. § 202 (2000), Congress passed the Portal-to-Portal Act, 29 U.S.C. §§ 251-262 (2000). The Portal-to-Portal Act aimed to countermand judicial interpretations of the FLSA that Congress found to evidence a
>
> > disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers with the results that, if said Act as so interpreted or claims arising under such interpretations were permitted to stand (1) the payment of such liabilities would bring about financial ruin of many employers and seriously impair the capital resources of many others . . . ; (2) the credit of many employers would be seriously impaired; (3) there would be created both an extended and continuous uncertainty on the part of industry, both employer and employee, as to the financial condition of productive establishments and a gross inequality of competitive conditions between employers and between industries; (4) employees would receive windfall payments, including liquidated damages, of sums for activities performed by them without any expectation of reward beyond that included in their agreed rates of pay; (5) there would occur the promotion of increasing demands for payment to employees for engaging in activities no compensation for which had been contemplated by either the employer or employee at the time they were engaged in; [and] (6) voluntary collective bargaining would be interfered with and industrial disputes between employees and employers and between employees and employees would be created.
>
> 29 U.S.C. § 251 (2000).
>
> Congress's efforts to curtail employee-protective interpretations of the FLSA continued when the FLSA was amended two years later to add, among other things, what would become § 203( o). As the sponsor of the relevant amendment explained to fellow representatives, the purpose of the amendment was to "avoid [ ] another series of incidents which led to the portal-to-portal legislation." 95 Cong. Rec. 11,433 (daily ed. Aug. 10, 1949) (comments of Representative Herter). Essentially, he explained, the amendment would strengthen the employer-protective Portal-to-Portal Act by closing a "loophole" therein. *Id.*

*Anderson*, 593 F.3d at 957-58.

§ 203(o). Kellogg argues that donning and doffing the standard equipment constitutes changing clothes and that payment for that time was excluded by custom or practice under a bona fide CBA. In response, Franklin asserts that the items at issue here are not clothes and that the Local Working Conditions provision of the CBA prohibits the creation of any unwritten customs or practices related to wages. She also contends that even if the Local Working Conditions provision can be construed as permitting unwritten customs or practices, there is a question of fact for the jury as to whether there was a custom or practice.

### 1. Burden of Proof

Franklin and Kellogg disagree as to who bears the burden of proving that the time spent donning and doffing the equipment is excluded under § 203(o). Franklin argues that § 203(o) is an exemption that should be strictly construed in her favor and that Kellogg bears the burden of proving that the time is excluded. Kellogg disagrees and suggests that § 203(o) is not an exemption, but rather an exclusion of time spent changing clothes from the definition of hours worked where there has been a custom or practice of nonpayment under a bona fide CBA.

The FLSA contains a provision entitled "Exemptions." *See* 29 U.S.C. § 213. These exemptions are treated as affirmative defenses and the defendant bears the burden of proving entitlement to them. *See, e.g.*, *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392-94 (1960). The "changing clothes" provision, however, does not fall under § 213's Exemptions, but under the definitions set forth in § 203. Some courts analyzing the burden under §203(o) have agreed with Franklin's position and treated §203(o) as an affirmative defense like those set forth in § 213. *See, e.g.*, *Alvarez v. IBP, Inc.*, 339 F.3d 894, 905 (9th Cir. 2003) (interpreting § 203(o) as an exemption that should be construed narrowly against the employer), *aff'd on other grounds*, 546 U.S. 21 (2005); *In re Cargill Meat Solutions Wage & Hour Litig.*, 632 F. Supp. 2d 368, 384 (M.D. Pa. 2008) ("[F]or purposes of statutory interpretation, an exception contained in § 203 should not be treated differently from an exemption contained in § 213."); *Kassa v. Kerry, Inc.*, 487 F. Supp. 2d 1063, 1072-76 (D. Minn. 2007) (explaining that "[w]here a motion for

summary judgment is founded on an affirmative defense, the moving party has the burden to present facts that establish that defense," and stating that the defendant had the burden to prove the time fell within § 203(o)).  However, the majority of our sister circuits that have addressed this issue have concluded that § 203(o) is not an affirmative defense and that the plaintiff bears the burden to prove that the time should not be excluded under § 203(o).  *See Allen*, 593 F.3d at 458-59; *Anderson*, 488 F.3d at 955-59; *Adams v. United States*, 471 F.3d 1321, 1325-26 (Fed. Cir. 2006) (concluding that exclusions under the Portal-to-Portal Act that are similar to § 203(o) are not FLSA exemptions and that the burden of proof is therefore on the plaintiffs); *Turner*, 262 F.3d at 226-27.

The reasons set forth by the majority of our sister circuits for interpreting §203(o) not as an exemption, which would place the burden of proof on the employer, but as an exclusion from the definition of work, placing the burden on the plaintiff, are persuasive. First, § 203 is simply a list of definitions and subsection (o) excludes in some instances "changing clothes" from the definition of hours worked.  This is in contrast to the specific exemptions identified in § 213.  *Allen*, 593 F.3d at 458.  In addition, although the Supreme Court has referred to "exemptions" under the FLSA as affirmative defenses, those "exemptions" "all 'relate[] to the total exclusion of a particular worker or workers from certain FLSA provisions[,]' not 'to the exclusion of only some *activities* from the FLSA.'"  *Id.* (quoting *Adams*, 471 F.3d at 1325-26).  As the Eleventh Circuit in *Anderson* explained, "[h]ad Congress sought to bestow upon §203(o) the same status as the exemptions set forth in § 213, it easily could have amended § 213 instead of § 203, which is titled, not coincidentally, 'Definitions.'"  488 F.3d at 957.  For these reasons, the Fifth Circuit concluded that §203(o) does not create an affirmative defense and that the burden remains on the plaintiff to establish entitlement to wages under the FLSA, including to prove that there is no custom or practice under a bona fide CBA related to "changing clothes."  *Allen*, 593 F.3d at 457.  We are persuaded by the Fifth, Eleventh, Third, and Federal Circuits and agree that § 203 is not an exemption and therefore not an affirmative defense.

**2. Changing Clothes**

To be excluded under § 203(o), donning and doffing the uniform and standard equipment must constitute "changing clothes." The district court concluded that putting on the uniform and equipment is "changing clothes." In doing so, it afforded deference to the DOL interpretation of "changing clothes" in its 2002 and 2007 Opinion Letters. Since the district court issued its opinion, however, the DOL once again changed its interpretation of § 203(o). *See* Adm'r Interp. No. 2010-2 (Dep't of Labor Wage & Hour Div. June 16, 2010) ("June 16 Interpretation").

Prior to the June 16 Interpretation, the DOL had addressed § 203(o) in four different opinion letters. In 1997, it considered whether "the following preliminary and postliminary activities: sharpening knives, waiting in line at wash stations, cleaning equipment, and putting on and taking off required safety gear" fell within § 203(o). Wage & Hour Div., U.S. Dep't of Labor, Opinion Letter, 1997 WL 998048 ("1997 DOL Opinion Letter"). Because the DOL reasoned that "section 3(o) provides an exemption from the broad, remedial provisions of the FLSA, it must be read narrowly," the DOL concluded that "by its very terms section 3(o) does not apply to the putting on, taking off, and washing of protective safety equipment, and, therefore, time spent on these otherwise compensable activities cannot be excluded from hours worked." *Id.* It further explained that "[t]he plain meaning of 'clothes' in section 3(o) does not encompass protective safety equipment," because "common usage dictates that 'clothes' refer to apparel, not to protective safety equipment which is generally worn over such apparel and may be cumbersome in nature." *Id.* The DOL reiterated this position in a later opinion letter issued in 2001. *See* Wage & Hour Div., U.S. Dep't of Labor, Opinion Letter, 2001 WL 58864 (Jan. 15, 2001) ("2001 DOL Opinion Letter").

However, in 2002, the DOL changed its stance on the meaning of "clothes." Wage & Hour Div., U.S. Dep't of Labor, Opinion Letter, 2002 WL 33941766 (June 6, 2002) ("2002 DOL Opinion Letter"). It stated that "[i]t is our view, based upon a reexamination of the statute and legislative history, that the 'changing clothes' referred to in section 3(o) applies to the putting on and taking off of the protective safety

equipment typically worn in the meat packing industry." *Id.* In contrast to its 1997 Opinion Letter, the DOL "interpret[ed] 'clothes' under section 3(o) to include items worn on the body for covering, protection, or sanitation, but not to include tools or other implements such as knives, scabbards, or meat hooks." *Id.* It reiterated this interpretation in 2007. Wage & Hour Div., U.S. Dep't of Labor, Opinion Letter, 2007 WL 2066554 (May 14, 2007) ("2007 Opinion Letter"). The DOL explained that "it remain[ed] [its] view, based upon the statute and its legislative history, that the 'changing clothes' referred to in section 3(o) applies to putting on and taking off the protective safety equipment typically worn by employees in the meat packing industry." *Id.* Further, it explained that "clothing includes, among other items, heavy protective safety equipment worn in the meat packing industry such as mesh aprons, sleeves and gloves, plastic belly guards, arm guards, and shin guards." *Id.*

Nonetheless, in the June 16 Interpretation, the DOL reverted back to the position it took in the 1997 and 2001 Opinion Letters. Specifically, it took the position that "dictionary definitions offer little useful guidance" in interpreting the meaning of the word "clothes," because "[s]uch definitions are, by design, a collection of a word's various meanings depending on the context in which it is used." June 16 Interpretation. However, because § 203(o) describes "clothes" in the context of the "workday," it looked to the legislative history in determining the meaning of clothes. *Id.* Although the amendment as it was originally introduced would have "permitted an employer and employee to 'bargain away' *any* activity performed by an employee" so long as it was done by express terms or it was a custom or practice of a CBA, the Conference Committee narrowed the amendment to include only changing clothes and washing. *Id.* According to the DOL,

> [t]he "clothes" that Congress had in mind in 1949 when it narrowed the scope of § 203(o)—those "clothes" that workers in the bakery industry change into and "took off" in the 1940s—hardly resembles the modern-day protective equipment commonly donned and doffed by workers in today's meat packing industry, and other industries where protective equipment is required by law, the employer, or the nature of the job.

*Id.*  Thus, it concluded that "the § 203(o) exemption does not extend to protective equipment worn by employees that is required by law, by the employer, or due to the nature of the job."  *Id.*

In *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), the Supreme Court concluded that although not controlling, administrative rulings, interpretations, and opinions may be entitled to some deference by reviewing courts.  *Id.* at 140.  "The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."  *Id.*; *see also Chao v. Occupational Safety and Health Review Comm'n*, 540 F.3d 519, 526-27 (6th Cir. 2008).  Although Franklin argued in her brief that the DOL Opinion Letters are not entitled to deference because the 2002 and 2007 letters are inconsistent with the 1997 and 2001 letters, she insisted at oral argument that we should follow the reasoning of the DOL's most recent interpretation.  Considering the factors laid out in *Skidmore*, we decline to do so.

First, "[a]n agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is entitled to considerably less deference than a consistently held agency view."  *INS v. Cardoza-Fonseca*, 480 U.S. 421, 446 n.30 (1987).  The DOL's position on this issue has changed repeatedly in the last twelve years, indicating that we should not defer to its interpretation.  Additionally, we find its interpretation to be inconsistent with the language of the statute.

"[I]n all cases involving statutory construction, our starting point must be the language employed by Congress, and we assume that the legislative purpose is expressed by the ordinary meaning of the words used."  *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982).  "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."  *Perrin v. United States*, 444 U.S. 37, 42 (1979).  "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of

its drafters.'" *United States v. Ron Pair Enters.*, 489 U.S. 235, 242 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)). "A leading dictionary defines 'clothes' as 'clothing,' which itself is defined as 'covering for the human body or garments in general: all the garments and accessories worn by a person at one time.'" *See Sepulveda v. Allen Family Foods, Inc.*, 591 F.3d 209, 214-15 (4th Cir. 2009) (quoting Webster's Third New International Dictionary 428 (unabridged) (1986)); *see also Anderson*, 488 F.3d at 955. Thus, the plain meaning of the word "clothes" is quite expansive. However, because the statute indicates that § 203(o) applies to changing into clothes worn during the workday, Congress was referring to clothes worn for the workday and not simply "ordinary" clothes. *See Sepulveda*, 591 F.3d at 215. Accordingly, there is no reason to limit the definition of clothes to uniforms, which are made up of pants and shirts, as Franklin suggests. Instead, "clothes" within the meaning of § 203(o) refers to any "covering for the human body or garments in general," particularly those worn for work. *Id.* (internal quotation marks omitted).

Given the context of the workday, § 203(o) clearly applies to the uniform at issue in the case at hand. The remaining items—hair and beard nets, goggles, ear plugs, non-slip shoes, and a bump cap—are also properly construed as clothes within the meaning of § 203(o). Each of these items provides covering for the body. Although they also provide protection to the body, we see no reason to distinguish between protective and non-protective clothes. It is arguable that even the uniform, which is clearly clothing, provides protection to the body. We recognize that there may be some heavier protective equipment than what is at issue here that is not clothing within the meaning of § 203(o). However, the items at issue here are simply "standard safety equipment." *See id.*; *Anderson*, 488 F.3d at 956. We agree with the Fourth and Eleventh Circuits "that these items 'fit squarely' within the definition of 'clothes.'" *Sepulveda*, 591 F.3d at 216 (quoting *Anderson*, 488 F.3d at 956).

We recognize that this conclusion is at odds with the June 16 Interpretation, as well as with the Ninth Circuit and several district courts.[3] In adopting the narrower meaning of "clothes," the DOL relied on the Ninth Circuit and several district courts that previously recommended that interpretation. *See* June 16 Interp. (citing *Alvarez*, 339 F.3d at 905; *In re Cargill*, 632 F. Supp. 2d at 383; *Spoerle v. Kraft Foods Global, Inc.*, 527 F. Supp. 2d 860 (W.D. Wisc. 2007); *Gonzalez v. Farmington Foods, Inc.*, 296 F. Supp. 2d 912 (N.D. Ill. 2003)). Most of the cases that the DOL relies on, however, interpreted § 203(o) as an exemption to be narrowly construed against the employer. *See Alvarez*, 339 F.3d at 905; *In re Cargill*, 632 F. Supp. 2d at 383; *Gonzalez*, 296 F. Supp. 2d at 931. Because we do not read § 203(o) as an exemption, we see no reason to adopt the narrower meaning of "clothes"; rather, we follow the plain meaning of the word. The June 16 Interpretation declined to rely on the dictionary definition of the word "clothing," because "[s]uch definitions are, by design, a collection of a word's various meanings depending on the context in which it is used." June 16 Interp. Based on the DOL's reasoning, we would never look to the dictionary definition of a word. That idea is simply inconceivable, given our extensive history of consulting dictionaries in defining undefined words in a statute. *See, e.g.*, *MCI Telecomm. Corp. v. AT&T*, 512 U.S. 218, 225 (1994) (citing dictionary definitions); *Nat'l R.R. Passenger Corp. v. Boston & Maine Corp.*, 503 U.S. 407, 418 (1992) (looking to both dictionary definitions and the context of the statutory language at issue). We cannot disregard the dictionary definition of the word. Moreover, although the DOL suggests that our interpretation is inconsistent with legislative history, we find our conclusion supported by the legislative history.

Although the FLSA was intended to protect employees, as discussed previously, *see supra* note 2, Congress enacted the Portal-to-Portal Act in an effort to protect "long-established customs, practices, and contracts between employers and employees." 29 U.S.C. § 251. Much like the Portal-to-Portal Act, Congress enacted § 203(o) to

---

[3]However, this interpretation of "clothing" under § 203(o) is consistent with a recent Seventh Circuit opinion. *Spoerle v. Kraft Foods Global, Inc.*, - F.3d - , No. 09-2691, 2010 WL 2990830, at *1 (7th Cir. Aug. 2, 2010).

"avoid [] another series of incidents which led to the portal-to-portal legislation."
95 Cong. Rec. 11,433 (daily ed. Aug. 10, 1949) (statement of Rep. Herter).  As the
Eleventh Circuit explained, "construing § 203(o) narrowly against employers as an
FLSA 'exemption' contravenes not only basic tenets of statutory construction but also
the readily apparent intent of the legislators who approved the amendment's language."
*Anderson*, 488 F.3d at 958.  The legislative history to which the DOL cites is not
contrary to this conclusion.  Although the proposed bill may have applied to *any* activity,
the bill as adopted applies only to changing clothes and washing.  *See* June 16 Interp.
Our interpretation of the word "clothes" does not expand the meaning of the statute to
"any activity," as the DOL suggests.  It simply recognizes that certain standard
protective equipment is properly considered to be clothes.[4]

Because the items at issue are clothes within the meaning of § 203(o), we must
consider whether there was a custom or practice under a bona fide CBA of nonpayment
for changing into those items.

### 3.  Custom or Practice

#### a.  Local Working Conditions Provision

Franklin asserts that the Local Working Conditions provision of the CBA
prohibits any unwritten custom or practice, including an unwritten custom or practice
regarding donning and doffing.  Kellogg argues, however, that the provision does not
prohibit such unwritten customs or practices, but only prohibits prospective unwritten
local working conditions.  Moreover, it asserts that because the practice of nonpayment
for donning and doffing existed when the first CBA was formed, the provision does not
apply to it.

---

[4]Based on the statement of a single Congressman, the DOL suggests that "clothing" under
§ 203(o) should be limited to the clothing worn in the baking industry at the time the statute was amended.
However, it never explains what those items would have included.  Instead, it reasons that the items would
not have included "the modern-day protective equipment commonly donned and doffed by workers in
today's meat industry."  June 16 Interp.  Presumably, however, it also would not include all of the items
at issue here, which are nearly identical to items at issue in *Sepulveda* and *Anderson*, cases with which the
Interpretation disagreed.  *Id.* at n.3.  We decline to so limit the definition of the word "clothing" without
a clearer indication that was what Congress intended, particularly in light of the remainder of the
legislative history indicating its intent to protect employers.

"Interpretation of a collective bargaining agreement begins with the explicit language of the agreement." *Raceway Park, Inc. v. Local 47, Servs. Employees Int'l Union*, 167 F.3d 953, 963 (6th Cir. 1999). "Unless ambiguous, a collective bargaining agreement is limited to the language contained in its four corners." *Trustees of B.A.C. Local 32 Ins. Fund v. Fantin Ents., Inc.*, 163 F.3d 965, 969 (6th Cir. 1998).

Franklin's argument assumes, without foundation, that all customs and practices at the Rossville plant are "local working conditions." Instead, the provision defines "local working conditions" as "specific practices or customs" related to "wages, hours of work or other conditions of employment" that have been reduced to writing and prohibits the future creation of any local working condition unless it is written and approved by the plant manager and the local Union president. However, nothing in the clause or elsewhere in the CBA states that all unwritten customs or practices are "local working conditions." The plain meaning of the provision leaves open the possibility that there may be unwritten customs or practices that are not local working conditions. Accordingly, the local working conditions provision does not prohibit any unwritten customs or practices, just unwritten local working conditions.

### b. Existence of a Custom or Practice

Franklin argues that a nineteen-year history of non-payment for time spent donning and doffing is insufficient to establish a custom or practice under a bona fide CBA. Instead, she argues that Kellogg must also prove that the Union or the employees knew that they were entitled to payment for that time. Moreover, she asserts that there are disputed facts as to whether the Union possessed this knowledge. Kellogg asserts that there was sufficient evidence of a custom or practice, demonstrated by many years of nonpayment and the Union's knowledge that its members were not being compensated for time spent donning and doffing.

In *Turner*, the Third Circuit concluded that evidence that donning and doffing was discussed during formal negotiations for a CBA is not required to prove a custom or practice. 262 F.3d at 226-27. Instead, it "view[ed] the phrase as simply restating the well-established principle of labor law that a particular custom or practice can become

an implied term of a labor agreement through a prolonged period of acquiescence." *Id.* at 226. Relying on *Turner*, the Eleventh Circuit in *Anderson* concluded "that a policy concerning compensation (or noncompensation, as the case may be) for clothes changing, written or unwritten, in force or effect at the time a CBA was executed satisfies § 203(o)'s requirement of a 'custom or practice under a bona fide' CBA." 488 F.3d at 958-59. The relevant inquiry, it concluded, was whether the Union was ignorant of the policy of noncompensation, not whether it was ignorant of its members' possible entitlement to payment. *Id.* at 959 (inquiring as to whether the Union lacked notice of the relevant compensation policy when it entered into each of the CBAs). Much like the Third and Eleventh Circuits, the Fifth Circuit in *Allen* concluded that "even when negotiations never included the issue of non-compensation for changing time, a policy of non-compensation for changing time that has been in effect for a prolonged period of time, and that was in effect at the time a CBA was executed, satisfies § 203(o)'s requirement of 'a custom or practice under a bona fide' CBA." 593 F.3d at 457 (quoting *Anderson*, 488 F.3d at 958-59). Thus, it continued, "[i]n such instances, regardless of whether the parties negotiated regarding compensation for changing time, acquiescence of the employees may be inferred." *Id.* However, "where there have been no relevant negotiations and the facts do not demonstrate that a policy of non-compensation for changing time has been in effect for a prolonged period of time, other evidence of knowledge and acquiescence by the employees will be required."[5] *Id.*

---

[5] Some other courts have interpreted "custom or practice under a bona fide" CBA differently than in the cases discussed above. Franklin relies on several of these cases. For example, relying on *Turner*, the district court in *Figas v. Horsehead Corp.*, No. 06-1344, 2008 WL 4170043 (W.D. Pa. Sept. 3, 2008), stated that a prolonged period of acquiescence was required to show a custom or practice. *Id.* at * 14. It further explained that such a period of acquiescence could be demonstrated by prior discussion of the issue of payment. *Id.*; *see also Kassa*, 487 F. Supp. 2d at 1071 ("Indeed, to the extent that the union members never raised the issue even among themselves, this may suggest that did *not* knowingly acquiesce in [the employer's] policy of nonpayment for clothes-changing time."). *Kassa*, a case upon which the court in *Figas* heavily relied, explicitly refused to find a custom or practice where the only evidence of acquiescence was the employer's history of nonpayment. 487 F. Supp. 2d at 1071 ("If an employer's history of nonpayment for clothes-changing time were sufficient, by itself, to establish a 'custom or practice' under § 203(o), then § 203(o) would essentially be an unlimited FLSA exemption applicable to every unionized employer that did not pay for clothes-changing time. The Court does not believe that § 203(o) is so sweeping.").

Most of the cases adopting the narrower construction of "custom or practice" also treat § 203(o) as an exemption under the FLSA. However, we have concluded that § 203(o) is not an exemption that should be construed narrowly against the employer. Accordingly, we are persuaded by the reasoning set forth in *Allen* and *Anderson*.

In the instant case, the policy existed long before Kellogg and the Union entered into the first CBA and the policy had been in effect for at least nineteen years. Moreover, there is no material question of fact as to whether the employees and the Union knew that Kellogg did not pay for time spent donning and doffing the uniform and equipment. Thus, the evidence demonstrates that there was a custom or practice of nonpayment for time spent changing clothes under a bona fide CBA. *See Allen*, 593 F.3d at 457; *Anderson*, 488 F.3d at 958-59. Accordingly, the time spent donning and doffing the equipment is excluded from "hours worked" under § 203(o).

## B. Post-Donning/Pre-Doffing Walking Time

Franklin argues that if we conclude that her time spent donning and doffing the uniform and equipment is excluded under § 203(o), she is still entitled to compensation for her time spent walking between the locker room and the time clock, because those activities are "principal activities." Under the "continuous workday" rule, "the 'workday' is generally defined as 'the period between the commencement and completion on the same workday of an employee's principal activity or activities.'" *IBP, Inc. v. Alvarez*, 546 U.S. 21, 29 (2004) (quoting 29 C.F.R. § 790.6(b)). In addition, "during a continuous workday, any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is . . . covered by the FLSA," and must be compensated. *Id.* at 37. Principal activities are those that are an integral and indispensable part of the activities which the employee is employed to perform. *See Steiner v. Mitchell*, 350 U.S. 247, 256 (1956).

### 1.    Does Exclusion Under § 203(o) Affect Whether an Activity is a Principal Activity?

One court recently explained that "[t]he courts have taken divergent views" on the issue of whether activities deemed excluded under § 203(o) may still constitute "principal activities." *In re Tyson Foods, Inc.*, 694 F. Supp. 2d 1358, 1370 (M.D. Ga. 2010). Some courts have concluded that time that is excluded under § 203(o) may still be a "principal activity," because § 203(o) only addresses the compensability of the time, not whether it is integral and indispensable. *See, e.g.*, *id.* at 1371 ("After considering

both of these positions, the Court concludes that § 203(o) only relates to the compensability of time spent donning, doffing, and washing of the person and that it does not mean that § 203(o) tasks cannot be considered principal activities that start the continuous workday."); *Andrako v. U.S. Steel Corp.*, 632 F. Supp. 2d 398, 413 (W.D. Pa. 2009) ("Section 203(o) relates to the *compensability* of time spent donning, doffing, and washing in the collective-bargaining process. It does not render such time any more or less integral or indispensable to an employee's job."); *Gatewood v. Koch Foods of Miss., LLC*, 569 F. Supp. 2d 687, 702 (S.D. Miss. 2008) ("Although the act of 'changing clothes' itself is barred based on § 203(o) . . . , the activities that occur after changing into sanitary gear and before changing out of sanitary gear are not impacted by the defense."); *Figas*, 2008 WL 4170043, at *20 ("[T]he *character* of donning and doffing activities is not dependent upon whether such activities are excluded pursuant to a collective-bargaining agreement."). In contrast, some courts—including the district court presiding over the instant case—have concluded that "once an activity has been deemed a section 3(o) activity, it cannot be considered a principal activity." *Sisk v. Sara Lee Corp.*, 590 F. Supp. 2d 1001, 1011 (W.D. Tenn. 2008); *see also Salazar v. Butterball, LLC*, No. 08-cv-02071-MSK-CBS, 2009 WL 6048979, at *14 (D. Colo. Dec. 3, 2009) (following *Sisk*); *Hudson v. Butterball, LLC*, No. 08-5071-CV-SW-RED, 2009 WL 3486780, at *4 (W.D. Mo. Oct. 14, 2009) ("Because time [plaintiff] spent sanitizing, donning, and doffing is excluded from hours worked under § 203(o), the walking time did not follow or precede a principal work activity, and therefore is not compensable."). Although the latter position was consistent with the 2007 Opinion Letter, the June 16 Interpretation rejected that position and concluded that "clothes changing that is covered by § 203(o) may be a principal activity." *Compare* 2007 Opinion Letter *with* June 16 Interp.

We agree with the courts that have taken the position that compensability under § 203(o) is unrelated to whether an activity is a "principal activity." Accordingly, we must consider whether time spent donning and doffing the standard equipment and uniform is integral and indispensable to Franklin's job.

### 2. Integral and Indispensable

Kellogg asserts that even though it requires its employees to wear these items, changing into them is not "integral and indispensable" under the FLSA. In *Steiner*, the Supreme Court concluded that changing into protective gear before beginning the shift and showering and changing out of the protective gear at the end of the shift was an integral and indispensable part of employment at a battery-manufacturing plant. 350 U.S. at 256 ("[I]t would be difficult to conjure up an instance where changing clothes and showering are more clearly an integral and indispensable part of the principal activity of the employment than in the case of these employees.") The Court did not address whether "changing clothes and showering under normal conditions" was integral and indispensable to the principal activity of work, and it did not explicitly hold that changing clothes and showering can only be integral and indispensable when the working environment was toxic or lethal. *See id.* at 249, 256. Nonetheless, at least one court applying *Steiner* has made that distinction. *See Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 594 (2d Cir. 2007). In *Gorman*, the Second Circuit held that donning and doffing of protective gear—helmet, safety glasses, and steel-toed boots—was not integral and indispensable to employment at a nuclear power plant. *Id.* It distinguished *Steiner* because "the environment of the battery plant could not sustain life—given the toxic substances in liquid, solid, powder, and vapor form (and in the dust of the air) that 'permeate[d] the entire [battery] plant and everything and everyone in it.'" *Id.* at 593 (quoting *Steiner*, 350 U.S. at 249) (alterations in original). It interpreted *Steiner* narrowly for the proposition "that when work is done in a lethal atmosphere, the measures that allow entry and immersion into the destructive element may be integral to all work done there." *Id.* However, under *Gorman*, when such a lethal environment is not present and the gear is not literally required for entry into the plant, donning and doffing gear is not integral.

The Second Circuit's position appears to be unique. The Ninth and Eleventh Circuits have both interpreted *Steiner* less narrowly. For example, relying on 29 C.F.R. § 790.8(c), the Ninth Circuit explained that "'where the changing of clothes *on the*

*employer's premises* is required by law, *by rules of the employer*, or by the nature of the work,' the activity may be considered integral and indispensable to the principal activities." *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 910 (9th Cir. 2004), quoting *Mitchell v. King Packing Co.*, 350 U.S. 260, 262-63 (1956) (holding that changing into and out of plant uniforms was integral and indispensable to the principal activities because the employer required its employees to wear the uniforms and doing so was performed for the benefit of the company); *see also Alvarez*, 339 F.3d at 902-03 ("To be 'integral and indispensable,' an activity must be necessary to the principal work performed and done for the benefit of the employer."). Similarly, the Eleventh Circuit held that the following three factors are relevant to the issue of whether an activity is integral and indispensable: "(1) whether the activity is required by the employer; (2) whether the activity is necessary for the employee to perform his or her duties; and (3) whether the activity primarily benefits the employer." *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1344 (11th Cir. 2007) (concluding that time spent going through security screening made mandatory by the FAA was not integral and indispensable because it was not for the benefit of the employer). We follow the reasoning of *Ballaris* and *Bonilla*.

Under the broader interpretation of integral and indispensable, donning and doffing the uniform and equipment is both integral and indispensable. First, the activity is required by Kellogg. Second, wearing the uniform and equipment primarily benefits Kellogg. Certainly, the employees receive protection from physical harm by wearing the equipment. However, the benefit is primarily for Kellogg, because the uniform and equipment ensures sanitary working conditions and untainted products. Because Franklin would be able to physically complete her job without donning the uniform and equipment, unlike the plaintiffs in *Steiner*, it is difficult to say that donning the items are *necessary* for her to perform her duties. Nonetheless, considering these three factors, we conclude that donning and doffing the uniform and standard equipment at issue here is a principal activity. *See IBP, Inc.*, 546 U.S. at 37 ("[A]ny activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity.'") Accordingly, under the continuous workday rule, Franklin may be entitled to payment for her post-

donning and pre-donning walking time.  Because there are questions of fact as to the length of time it took her to walk from the changing area to the time clock and whether that time was *de minimis*, however, we reverse and remand to the district court for further consideration of this issue.

## IV.  CONCLUSION

For the foregoing reasons, we **AFFIRM IN PART** and **REVERSE IN PART** the district court's judgment.  We **REMAND** for the court to consider the length of walking time and whether that time is *de minimis* under the statute.

_____

**DISSENT**
_____

CLAY, Circuit Judge, dissenting.  I agree with the majority that the donning and doffing activities at issue constitute "changing clothes" for purposes of Section 203(o), that the "Local Working Conditions" provision in the Collective Bargaining Agreement ("CBA") does not preclude the formation of unwritten customs or practices, and that the donning and doffing here is a principal activity such that Plaintiff may be entitled to payment for walking time.  However, I disagree with the majority that no material questions of fact remain as to whether the Union knowingly acquiesced to nonpayment for donning and doffing time such that this custom or practice became an implied term of the CBA.

Parties are not required to engage in formal negotiations to create a custom or practice under a bona fide CBA; rather, "a particular custom or practice can become an implied term of a labor agreement through a prolonged period of acquiescence." *Turner v. City of Philadelphia*, 262 F.3d 222, 226 (3d Cir. 2001) (citing *Detroit & Toledo Shore Line R.R. v. United Transp. Union*, 396 U.S. 142, 153-54 (1969)); *see also Anderson v. Cagle's Inc.*, 488 F.3d 945, 958-59 (11th Cir. 2007) ("[A] policy concerning compensation (or noncompensation, as the case may be) for clothes changing, written or unwritten, in force or effect at the time a CBA was executed satisfies § 203(o)'s requirement of a custom or practice under a bona fide CBA.") (internal citation and quotation marks omitted).  "In determining whether such acquiescence was present, the Court can consider whether the issue of payment for the contested time had been discussed on prior occasions." *Figas v. Horsehead Corp.*, No. 06-1344, 2008 WL 4170043, at *14 (W. D. Pa. Sept. 3, 2008) (citing *Kassa v. Kerry, Inc.*, 487 F. Supp. 2d 1063, 1071 (D. Minn. 2007) ("Indeed, to the extent that the union members never raised the issue even among themselves, this may suggest that they did not knowingly acquiesce in [the employer's] policy of non-payment for clothes-changing time.")).

In the instant case, Defendant never compensated its employees for time spent donning and doffing clothes during the nineteen years it operated the Rossville facility. The issue of donning and doffing is not addressed in any of the CBAs between Defendant and the Union, it was never raised during bargaining between the Union and Defendant, and no employee has ever filed a grievance to obtain compensation for changing time. Plaintiff submitted declarations from five Union officials who took part in the bargaining negotiations of nearly every CBA since the inception of the Rossville plant, stating that they were unaware that time spent donning and doffing was compensable and that they would have raised the issue had they known. However, Teresa West, Local Union Executive Board member from 1998 to 2003 and Local Union Financial Secretary from 2000-2003, submitted a declaration stating that, on at least one occasion, the Union considered including payment for changing time in its preliminary list of contract proposals. She added that the Union "never pushed hard for compensation for donning and doffing time" and instead emphasized other issues. (West Decl. ¶ 11).

The district court found West's declaration to "undercut[] Plaintiff's argument that the employees did not knowingly acquiesce to Defendant's policy." (Dist. Ct. R.E. 264 at 28). The district court further found that: (1) Plaintiff found out from Union steward Alicia Williams that employees had not been getting paid for donning and doffing for a long time, and (2) the Union had institutional knowledge of the non-payment based on its representation of employees at the Lancaster plant in a lawsuit seeking compensation for clothes-changing time.

However, the district court erred by determining that no issues of fact remain as to whether the Union knowingly acquiesced to the nonpayment. In coming to its conclusion that the Union knowingly acquiesced, the district court credited West's declaration stating that, on at least one occasion, the Union considered including payment for changing time in its preliminary list of contract proposals. However, West's declaration is disputed by the declarations of five Union employees stating that the Union lacked knowledge of the right to payment. While the district court was not

necessarily required to find West more credible than the other five Union employees to credit West's declaration–since it is theoretically possible that West was privy to a conversation that the other five were not–weighing the evidence and determining the credibility of each witness are tasks for the jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."). Furthermore, it unclear whether West would have been in a position to know about what the Union considered including in the CBA, since she participated in preparing for contract negotiations but was not an official member of the Union bargaining team. Meanwhile, the five employees who submitted declarations on behalf of Plaintiff all participated in the bargaining negotiations that resulted in the CBAs. Accordingly, the competing declarations at the very least create an issue of fact for a jury.

Likewise, the decision of whether to credit Williams' statement that she told Plaintiff that employees had not been getting paid for donning and doffing for a long time is reserved for a jury. Moreover, the question of whether the Union had "institutional knowledge" based on its representation of employees of the Lancaster plant who sued Defendant in 2004 for compensation for clothes-changing time is one of disputed fact. While the Union is part of the same international organization as the Union that represented the Lancaster employees, the Union that represents the Rossville employees negotiates a CBA that applies exclusively to the Rossville plant.[1] Rather than viewing the evidence in the light most favorable to Plaintiff, the district court made a number of inferences that a jury should decide. Accordingly, issues of fact remain for the jury in determining whether the Union knowingly acquiesced to nonpayment for donning and doffing time.

---

[1]Defendant also claims that the Union had institutional knowledge based on an article on the AFL-CIO's website, the weekly paystubs that employees receive reflecting the hours of payment, and the Union's successful negotiation for payment for lunch. However, as with the evidence listed above, a jury, not a judge, should weigh the strength of this evidence.

Defendant argues that even if the Union did not know of their right to assert a claim for time spent donning and doffing, the Union acquiesced to the custom or practice based on their prolonged silence. Plaintiff argues that silence and inaction are not enough to show that the Union *knowingly* acquiesced to the nonpayment. Defendant cites a number of dictionary definitions of acquiescence indicating that acquiescence can occur through silence and inaction. *See, e.g., Blacks Law Dictionary* 25 (8th ed. 2004). Defendant also cites two cases from the Eleventh and Third Circuits in which the courts found that the plaintiffs had acquiesced to the custom or practice of nonpayment for donning and doffing. *See Turner*, 262 F.3d at 227; *Cagle's*, 488 F.3d at 958-59. In *Turner*, the court found a custom or practice of nonpayment for donning and doffing time where the employer demonstrated that: (1) the employer had not paid its employees for their donning and doffing time for a period exceeding thirty years; (2) every collective-bargaining agreement between the employer and the employees had been silent as to the issue of compensation for donning and doffing time; (3) *compensation for the employees' donning and doffing time had been proposed by the president of the employees' union*; (4) the union had not made a request for such compensation during formal collective-bargaining negotiations; and (5) the union had never filed a grievance or demanded arbitration based on the employees' lack of compensation for donning and doffing time. *Turner*, 262 F.3d at 225. In *Cagle's*, the court found that a custom or practice of nonpayment existed where the CBA was silent as to the issue of compensation for changing time, and the parties never discussed the issue. *Cagle's*, 488 F.3d at 958-59. The court found that "[a]bsence of negotiations cannot in this instance equate to ignorance of the policy. Rather, it demonstrates acquiescence to it." *Id.* at 959.

Contrary to Defendant's argument, even the cases that Defendant cites require acquiescence to be knowing. The point of disagreement in the two cases is whether knowledge can be inferred from prolonged silence. In *Turner*, the parties stipulated to the fact that the union had discussed the issue internally. In *Cagle's*, the court interpreted the union's prolonged silence as evidence that the union knew about the right and chose to abandon it. The more prudent course would be for this Court to follow the

approach of *Turner* rather than *Cagle's* by finding that silence and inaction–without some indication that the Union had discussed the issue–are not enough to show that the Union knew about its right to payment and chose to abandon it.

Accordingly, I would find that the Union's silence over the relevant nineteen year period does not create a custom or practice at the Rossville plant, since a question of fact remains as to whether the Union knew that it had a right to payment. Therefore, I respectfully dissent.