NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0316n.06

No. 23-5942

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 22, 2024
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| J&S WELDING, INC., | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| LIBERTY MUTUAL INSURANCE COMPANY, et al., | ) | |
| Defendants-Appellees. | ) | OPINION |
| | ) | |

Before: BOGGS, CLAY, and GIBBONS, Circuit Judges.

BOGGS, Circuit Judge. J&S Welding, Inc. ("J&S") has appealed a summary-judgment order by the trial court in favor of West American Insurance Company ("West American") and Liberty Mutual Insurance Company ("Liberty Mutual"). This insurance coverage dispute arises out of wind and a hailstorm, which allegedly damaged one of the roofs of J&S's two commercial properties insured by West American. J&S alleges that structural damage occurred, whereas West American contends that the damage was only cosmetic in nature and therefore fell under the cosmetic-damage exclusion in the insurance contract. J&S argues that the district court erred when (1) applying the summary-judgment standard, (2) finding that the language in the cosmetic-damage exclusion was unambiguous and applying the cosmetic-damage exclusion, and (3) failing to admit the testimony of its owner and its public adjuster as expert testimony. We affirm for the reasons given below.

## I. BACKGROUND

J&S owns the real property on which two commercial buildings are located: a large shop building and a smaller building. The roofs of these two commercial shop buildings are covered by the same metal roof paneling, and the roof atop the large shop building is the same metal roof that was installed in the early 1980s. In November 2019, West American underwrote and issued an insurance policy providing certain coverages for the commercial shop buildings. Because the parties agreed that Liberty Mutual took no part in the issuance of the policy, the district court determined that Liberty Mutual is not a proper party to this action.[1] J&S's insurance policy from West American contained a "Roof Surfacing Cosmetic Loss Exclusion" that stated as follows:

> We will not pay for "cosmetic loss or damage" to any "roof surface" caused by wind and/or hail. For the purpose of this endorsement, "cosmetic loss or damage" means marring, pitting or other superficial damage caused by wind/and or hail that alters the physical appearance, but does not prevent the roof from continuing to function as a barrier to entrance of the elements to the same extent as it did before the "cosmetic loss or damage" occurred. "Roof surface" refers to the shingle, tiles, flashing, cladding, metal or synthetic sheeting or any other materials used for the roof, including all materials applied to or under the roof for protection or insulation from moisture or the elements.

On May 4, 2020, a hailstorm occurred, according to the testimony of Beau Eddings, J&S's owner and corporate representative. Eddings testified that the storm began at the end of the workday, the worst of the storm passed through during the night, and that no one was present on the property during the storm. Eddings and his employees discovered water on the interior of the building the day after the storm, observed water running down the interior walls in three-foot-wide swathes, and allege that the water leaking damaged the building's electrical panel and insulation,

---

[1] J&S does not appeal this ruling.

as well as all the equipment inside including tools and inventory. J&S asserts that there was only a single leak prior to the storm and, after the storm, thirteen different leaks occurred.

In June 2021, approximately one year after the hailstorm, J&S's public adjuster, William Griffin, filed a claim with West American related to the alleged hail damage to the roofs of both buildings that occurred during the storm. In July 2021, West American retained Larry Ransom of Sedgwick Claims Management Services to conduct an initial inspection of the property. Ransom estimated that the actual cash value of the J&S's claim was $49,584.95 and a total replacement-cost value was $57,189.88. West American then issued payments to J&S in accordance with the policy, in the amount of $48,584.95 after applying a $1,000 deductible. J&S accepted and cashed the check issued by West American for the full amount.

J&S alleges that the initial coverage determination made by West American was insufficient because the damage sustained to the roofs of the buildings was not merely cosmetic. In response, West American retained Michael Williamson, an engineer from Donan Engineering Company, to further inspect and assess the alleged storm damage in September 2021. Williamson prepared a report in October 2021, finding that the minor dents on the roof coverings were "cosmetic in nature" and that the functionality of the roofs had "not been affected by the hail." Williamson also noted that the "hail impacts would not result in the 3[-]foot by 5-foot long lifting of the overlap seams as is present on the main building," and determined that the "lifted panels are the result of deferred maintenance" and "the leaks are due to missing screws and degraded sealant on the roof."

In October 2021, West American emailed Griffin, advising him that the storm damage to the roof was "cosmetic in nature and has not affected the function or longevity of the roof," and that the Roof Surfacing Cosmetic Loss Exclusion Policy applied. J&S then filed suit in state court,

alleging that West American "severely undervalued the claim" and "refuse[d] to pay the true amount of loss, which [was] a material breach of the" policy and requested compensatory damages of up to $250,000. The complaint also noted that Griffin "prepared an estimate as a public adjuster" regarding the alleged storm damage.

In August 2022, after J&S filed suit in state court, West American retained two additional experts—Brian Moon, a structural engineer at EnVista Forensics, and Tim Kelley of West Tennessee Restoration—to conduct a site inspection to re-evaluate whether the property had sustained non-cosmetic damage during the storm. Moon personally inspected the buildings in August 2022, and issued a detailed written report of his findings in January 2023. Moon found that the hail damage to the building, including indentations on the metal roofs, would "constitute damage that would not affect the functionality or longevity of the materials" and found that the minor hail damage to both buildings did "not affect the functionality or longevity of the roof covering and wall siding." Kelley also inspected the buildings on the same day in August 2022, determining that the storm damage to the roof was "so minor in nature that it does not appear in photos" and would not affect the functionality of the roof.

As for Plaintiff's evidence, Eddings testified that he did not "walk on the roof" and that he was "not a contractor or roofer" when asked what knowledge he had about the cost to repair the alleged storm damage to the property. Eddings went on to testify that he did not "set the process that are on these quotes" so he does not know "if it's undervalued or overvalued." Besides William Griffin, J&S's public claims adjuster, no other entity or expert has given J&S estimates for what it would cost to repair or replace the roof or the tools and electrical equipment which were allegedly damaged by the storm.

## II. STANDARD OF REVIEW

We review the grant of summary judgment de novo. *Franklin v. Kellogg Co.*, 619 F.3d 604, 610 (6th Cir. 2010). Summary judgment is appropriate when the evidence presented shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). The moving party bears the burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

## III. ANALYSIS

*1. Summary Judgment*

A movant is only entitled to a grant of summary judgment if it can show that there are no issues of material fact and that it is entitled to judgment as a matter of law. *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014). Here, the movant was clearly entitled to summary judgment. J&S did not disclose or produce any expert evidence to rebut the three different experts retained by West American to prove that the damages to J&S's property were not cosmetic in nature. J&S did not object to the overwhelming expert evidence proffered by West American throughout the trial court proceedings, on summary judgment, and now on appeal.

Therefore, there is undisputed proof that the damage was cosmetic in nature. The district court correctly determined that J&S failed to create a genuine dispute over whether the cosmetic-loss exclusion bars coverage for the claimed damage.

*2. Policy Ambiguity*

J&S contends that the language of the cosmetic-loss exclusion of its insurance contract with West American was ambiguous. Under Tennessee law, insurance contracts are construed "in the same manner as any other contract." *Alcazar v. Hayes*, 982 S.W.2d 845, 848 (Tenn. 1998). As such, the policy's language must be given its plain and ordinary meaning. *Sec. Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1006 (6th Cir. 1995). Exclusions in insurance policies must be construed against the insurance company and in favor of the insured. *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 886 (Tenn. 1991). Exclusionary clauses, however, should not be "so narrowly construed as to defeat their evident purpose." *Tomlinson v. Bituminous Cas. Corp.*, No. 96-5944, 1997 WL 397248, at *1 (6th Cir. July 10, 1997) (applying Tennessee law). The party alleging the ambiguity bears the burden of showing any ambiguity in the contract. *Stryker Corp. v. Nat'l Union Fire Ins. of Pittsburgh*, 842 F.3d 422, 428 (6th Cir. 2016).

The district court correctly determined that the cosmetic-loss exclusion was clear and unambiguous. The court observed that the policy excluded "any loss or damage (1) consisting of marring, pitting, or other superficial damage, (2) caused by wind and/or hail, (3) that alters the physical appearance of the roof, (4) but without preventing the roof from continuing to function as a barrier to entrance of the elements to the extent that it did before the loss or damage occurred." Moreover, as noted by the district court, J&S failed to "show why the language of the [P]olicy is 'of uncertain meaning and may fairly be understood in more ways than one.'"

J&S argues that the cosmetic-loss exclusion is ambiguous because the roof's ability to operate as a barrier of entry of the elements has been compromised. In other words, J&S contends that, because there are alleged leaks through the roof, the damage is not cosmetic, and the cosmetic-loss exclusion should not apply to its claim. But J&S misconstrues the standard—it must show that

there was ambiguity of language in the exclusion itself. J&S did not do this, instead attempting to re-raise the merits of its damages claim improperly framed as an ambiguity challenge. Even when viewed in its favor, the language is clear, and J&S has failed to show that the language in the exclusion could be understood in another way. As such, the district court properly evaluated the exclusion and determined that the language was clear and unambiguous and applied it to the loss.

*3. Lay & Expert Testimony*

In a case involving a professional service, "the ordinary layman is not equipped by common knowledge and experience to judge the skill and competence of that service" and determine whether it meets the standards of practice in that professional community. *Koch v. Gorrilla*, 552 F.2d 1170, 1174 (6th Cir. 1977). In such a case, the aid of expert testimony from those who are learned in the profession is required. *Ibid.*

To qualify as an expert witness, the person must be qualified within a specific field of knowledge about which he purports to testify. *See* Fed. R. Evid. 702. By contrast, a lay witness may offer testimony in the form of an opinion if it is rationally based on perception, helpful to understanding the witness's testimony or determining a fact at issue, and is not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. *See* Fed. R. Evid. 701. This lay-opinion testimony is permitted under Rule 701 because it describes something that jurors cannot otherwise experience for themselves, allowing the jurors to draw "upon the witness's sensory and experiential observations that were made as a first-hand witness to a particular event." *United States v. Freeman*, 730 F.3d 590, 595 (6th Cir. 2012) (quoting *United States v. Jayyousi*, 657 F.3d 1085, 1120 (11th Cir. 2011) (Barkett, J., concurring in part and dissenting in part)).

An additional distinction between expert and lay witnesses is that an expert must provide a written report. Those who are specifically retained or employed to provide expert testimony must

provide a written report signed by the witness that complies with various requirements. *See* Fed. R. Civ. P. 26(a)(2)(B). If a party fails to comply with the requirements of Rule 26(a), the party is not allowed to use that information "to supply evidence on a motion, hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Here, the design and integrity of the metal roofing installed on the two commercial buildings are matters outside the common knowledge and experience of the ordinary laymen. Testimony regarding the functionality of the roofs that were allegedly damaged by a storm clearly qualifies as "scientific, technical, or other specialized knowledge" under Fed. R. Evid. 702, as correctly determined by the district court.

J&S's claims arise out of storm damage to metal roofing to two buildings on its property, which implicates specialized knowledge related to metal roofing systems. Yet, J&S did not provide any expert testimony regarding the integrity of the roofing, which it claims cannot continue to function as a barrier of entrance to the elements. West American, however, introduced overwhelming evidence into the record from three experts who inspected the two buildings and opined that the alleged roof damage from the hailstorm was merely cosmetic.

J&S appears to argue that, because the testimonies of its public adjuster and owner contained both fact and opinion testimony, the testimonies should be considered expert testimony or that they constitute particularized knowledge under the commentary of Rule 701. This argument is misguided. J&S never disclosed its public adjuster, William Griffin, or its owner, Beau Eddings, as expert witnesses at trial. Under Rule 104(a), the trial court determines, as a preliminary matter, whether a proffered witness is qualified to testify in a case. Fed. R. Evid. 104(a). The trial court did not have this opportunity because J&S did not disclose or submit any Rule 26 information. *See*

Fed. R. Civ. P. 26(a)(2)(B). Because J&S failed to disclose both Griffin and Eddings as experts, they were not properly before the court as experts. *Ibid.*

Nevertheless, the trial court generously entertained J&S's argument that Griffin and Eddings should have been permitted to offer opinion testimony under Rule 701 with respect to a potential causation argument. However, the district court properly held that "[e]ven if Eddings had rendered an opinion about the cause of the leaks, he lacks the training or experience to address the functionality of the roof." In his deposition, Eddings admitted that he "never walked on the roof," that he was "not a roofer," and that he was "not a contractor." Accordingly, Eddings's limited perception or particularized knowledge of his property does not fall under the commentary to Rule 701. Any lay testimony that Eddings could offer about the functionality of the roof would be inadmissible. *Cf. Freeman*, 730 F.3d at 596 (explaining that lay witnesses may not provide opinions regarding events outside of their personal perception).

Likewise, the trial court first allowed J&S's public adjuster, William Griffin, to proffer an estimate and testimony allegedly admissible at trial before determining that his estimate did not include any information that could rebut the evidence on the nature or cause of the roof damage put forth by West American. Griffin provided an estimate of the alleged damage, including an estimate that represented the replacement cost of the roofing system, but that estimate did not comply with Fed. R. Civ. P. 26(a)(2)(B). Moreover, although Griffin's estimate opined on the costs associated with the purported damage, the estimate did not opine on the cause of damage or include any reasoning as to why the roof required replacement. For these reasons, Griffin cannot be considered an expert, nor does he appear to have any particularized knowledge that would allow him to qualify under the commentary to Rule 701.

As a result, the trial court correctly determined that J&S did not offer any admissible qualified-expert testimony and "has not introduced any evidence from which a reasonable jury could reject West American's opinion evidence." Because J&S has failed to submit any admissible evidence rebutting West American's conclusion that the roof's damage was merely cosmetic, summary judgment was correctly granted, and we affirm the district court.

**AFFIRMED.**